Turley, J.
delivered the opinion of the court.
The prisoner was tried and convicted for the offence of malicious shooting, at the March term, 1847, of the Criminal *545 Court of Memphis, and sentenced to confinement in Jail and Penitentiary of the State for two years.
A reversal of this judgment is asked of this court for three reasons:
1st. That the proof adduced on the trial, does not establish the commission of the offence with sufficient certainty to'warrant the verdict.
2nd. Anew trial ought to have been granted by the Judge of the Criminal Court, upon the affidavit of Loyd W. De-loach, one of the jurors who tried the case, as to the motives and considerations which induced him to agree to a verdict of guilty, when he believed the prisoner not to be guilty.
3rd. That the conduct of the jury upon their retirement, was of such a character as should have induced the Judge to set aside their verdict, and award a new trial..
Upon an examination of all these propositibns conjointly, we have come to the conclusion, that it would not be proper to deprive the prisoner of his liberty for this alleged offence, without another trial. We do not deem it necessary to enter into a minute investigation of these different propositions,, because we do not think proper, with the views we have, of the case, to give any direct opinion upon the guilt or innocence of the prisoner, which may preclude a proper investigation thereof upon another trial. But merely to shew that the case is left by these objections (to say the least of it) in such a doubtful position as to the prisoner’s guilt, as not to justify us in depriving him of his liberty without another trial. We have occasion to say frequently, that in criminal cases effecting the life and liberty of a citizen, we will scrutinise and weigh the testimony adduced on the trial, and grant a new trial, if it, in our judgment, preponderates against the conviction.
We are strongly impressed with the belief that it does so in this case. The character of the prisoner, and the circumstances under which the discharge of the pistol took place, both tend to this impression. The prisoner is proven to be an exceedingly timid man, and addicted to intemperance, that he was quite drunk on the night the offence was committed; there was no adequate cause given for the shooting, or even *546 the drawing of the pistol, if the design had been to shoot the prosecutor, it is difficult to comprehend why it was not done at once; it is obvious from the proof, that it might have been done before the prosecutor closed with the prisoner, in which close the pistol discharged. The prosecutor, after a few words of altercation with him, was standing with his back to the prisoner, when he heard some one say the prisoner had drawn a pistol, he turned and saw him standing six or seven feet from him with the pistol in his hand. The prosecutor sprang instantly (as he says) a step or two, caught the pistol round the muzzle with his right hand; he says he had his hand on it before it fired, but is not certain whether he had gripped it with his hand before it fired, but thinks not.
Now, the impression, from the proof of this prosecutor alone (and it is much strengthened by that of others), is strongly made upon us, that the prisoner drew the pistol out of a drunken bravado, with no intention whatever of using it against the prosecutor, and that it was accidentally discharged in the struggle for its possession between the prosecutor and the prisoner. The prisoner certainly had time to have used it before the prosecutor could have closed with him, if he had designed so to do. The pistol is proved to be a six barrel revolver, and might, therefore, (as it is discharged always by pulling on the trigger without being previously cocked) have been easily fired, without intention, in the struggle for its possession. And moreover, it does not appear that further attempt was made by the prisoner to resist, but he gave it up as soon as he found one who he believed would not permit him to be injured, and upon whom he had been calling for protection during the struggle.
With these impressions of the facts of the case, w'e are not satisfied to let the verdict stand.
But this view of the case is strengthened by the other objection taken for the defence.
Loyd W. Deloach, one of the jurors who tried the case, files his affidavit, in which he in substance, states, that be believed the prisoner was not guilty; that he was induced by some of the jurors to believe that there were fatal defects in some part of the proceedings that would prevent the prisoner from being *547 sent to the Penitentiary; that they would find a verdict oi‘ guilty and recommend him to the mercy of the court, and that that recommendation being sent to the Governor, would procure his pardon; that his doubts of the prisoner’s guilt were so great, that no consideration would have induced him to render the verdict except those set forth in his affidavit.
The affidavits of several others of the jurors were introduced to weaken the effect of that of Deloach, which they do in some minor particulars, but they leave the leading facts untouched, in fact strengthen some of them. There is nothing in them which will justify us in "saying, that Deloach did not believe that the prisoner was innocent of the offence, and that he would have agreed to the verdict if he had not been induced to believe that the prisoner would not be sent to the Penitentiary, but would be pardoned by the Governor. This is so much in substance like the case of Crawford vs. The State, 2 Yerg. R., that it is difficult to draw a distinction.
Then, again, the jury were permitted to go at large too loosely for the safety of persons charged with offences effecting their liberty. Too much strictness cannot be used to keep a jury, charged with the life or liberty of a citizen, from mingling with the community during their deliberations, and this the more especially where there is any excitement for or against the prisoner.
Perhaps the separation of the jury in this case, was not of such a character as would, if it stood alone, have caused us to grant a new trial, but it strengthens our views, arising out of the other points of the case.
Upon the whole, then, we think that a proper regard to liberty-requires that the verdict and judgment in this case be set aside, and a new trial granted.